# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
# (Greenbelt Division)

| | |
|---|---|
| **In re:** | |
| **FELICIA RENEE JANUARY,** | **Case No. 13-27819-TJC** |
| | **(Chapter 7)** |
| **Debtor.** | |

## MOTION TO DISMISS FOR ABUSE

Movant Judy A. Robbins, the United States Trustee for Region 4 ("United States Trustee"), by and through undersigned counsel, hereby asks this Court for an order dismissing this case for abuse under 11 U.S.C. § 707(b)(2) and (b)(3). In support thereof, the United States Trustee states as follows:

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a), (b); and 28 U.S.C. § 157.

2. On October 21, 2013, Debtor Felicia Renee January, through counsel, filed a voluntary petition for relief under the liquidation provisions of Chapter 7 of the Bankruptcy Code.

3. Steven Greenfeld was appointed to serve as Chapter 7 Trustee. The Trustee held and concluded the meeting of creditors required by 11 U.S.C. § 341(a) (the "341 Meeting") on November 26, 2013.

4. On November 27, 2013, the Chapter 7 Trustee determined that this is a "no-asset" case. (Dkt. 13.)

5. Pursuant to 11 U.S.C. § 704(b)(1)(a), the United States Trustee timely filed a Statement of Presumed Abuse ("10-Day Statement") on December 5, 2013. (Dkt. 15.)

6. Pursuant to Section 704(b)(2), this Motion is timely filed within thirty (30) days of

the 10-Day Statement.[1]

7. On Schedule D, the Debtor lists a total of $324,565.66 in secured debt. (Dkt. 1 at p. 6.) On Schedule E, she lists list $0.00 of unsecured priority debt. (*Id.*) On Schedule F, she lists $50,011.82 in unsecured nonpriority debt. (*Id.*) On her petition, she states that her debt is primarily consumer debt. (Dkt. 1 at p. 1.)

8. According to Schedule I, the Debtor has worked as a Government Consultant for Booz Allen Hamilton for more than four (4) years and earns gross monthly income of $8,588.63 and net monthly income of $5,172.04. (Dkt. 1 at pp. 28-29.)

9. Annually, her gross monthly income totals $103,063.56.

10. On Schedule J, the Debtor states that her monthly expenses total $6,515.91 and, therefore, her net monthly income totals **(-$1,343.87).** (Dkt. 1 at pp. 29-30.)

11. According to Schedule I, the Debtor has two dependents, a niece aged 12 and a brother aged 44. (Dkt. 1 at p 28.)

## This Case is Presumptively Abusive

12. Section 707(b)(2)(A)(i) requires the Court to presume that a debtor's chapter 7 filing is an abuse of the provisions of chapter 7 if the debtor's current monthly income reduced by permitted deductions and multiplied by 60 is equal to or greater than 25% of the debtor's nonpriority unsecured claims or $7,475, whichever is greater, or is greater than $12,475.[2]

13. In her Statement of Current Monthly Income and Means Test Calculation ("Form B22A"), the Debtor indicated that the presumption of abuse did not arise. (Dkt. 6.)

---

[1] The Motion was due on Saturday, January 4, 2014. Pursuant to Fed. R. Bankr. P. 9006(a)(1)(C), the deadline was thus extended to Monday, January 6, 2014.

[2] These numbers were adjusted (and increased) for cases such as the Debtor's, whose case was filed after April 1, 2013.

14. However, the Debtor has made errors on Form B22A. When these are corrected, the presumption of abuse will arise.

15. On Form B22A, the Debtor states that she is a household of three (3).[3]

16. First, based upon a review of her Schedules and her testimony as to her tax returns at the 341 Meeting, the Debtor is over-withholding for taxes on Line 25 of Form B22A. On Line 25, she deducts $2,817.67 in taxes. (Dkt. 6 at p. 4). This amounts to $33,812.04 annually.

17. According to the tax returns she filed in 2012, the Debtor received a total of $6,588.63 in federal and state refunds[4] and owed a total of $16,654 in federal and state taxes.

18. A debtor's tax withholdings should reflect actual liability, not the amounts she chooses to have withheld from her pay check. *See, e.g.*, *In re Lawson*, 361 B.R. 215, 222-23 (Bankr. D. Utah 2007) (Deductions on Line 25 should reflect actual tax liability, not the amount debtors choose to withhold); *In re Johnson*, 346 B.R. 256, 269 (Bankr. S.D. Ga. 2006) (Same).

19. If the actual tax liability for 2012 ($16,654) is divided by 12, the Debtor's true monthly liability for income taxes is $1,387.83. Her Social Security and Medicare tax liability should be approximately $650 monthly; and, thus, the amount withheld on Line 25 should total about $2,037.83 (not the $2,817.67 she has claimed). Accordingly, the amount the Debtor lists on

---

[3] The Debtor indicates on Schedule J and testified at the 341 Meeting that her household includes her 44-year-old brother and a 12-year-old niece. She has not demonstrated that either of these individuals are official dependents in terms of IRS standards; nor has she explained why she is obligated to support these individuals. Until the United States Trustee reviews her tax returns, we cannot be certain that number is correct. Thus, for now, the United States Trustee is basing her analysis on the assumption that this assertion is correct.

[4] On Schedule B, the Debtor lists a total of $8,553 in federal and state tax refunds for 2012 (Dkt. 1 at p. 11). However, at the 341 Meeting, the Debtor testified that she learned post-petition that she had to return $2,000 of these refunds. These documents have not been provided yet to the United States Trustee to be verified. However, the United States Trustee assumes the Debtor's testimony is correct, and, thus, is using as her analysis total 2012 tax refunds of $6,553.

Line 25 is overstated by approximately $780. The United States Trustee, therefore, asserts that the Debtor should reduce withholdings on Line 25 by at least $780 per month, which monies should be made available to repay creditors.

20. Next, the Debtor has taken an improper deduction on Line 32 of Form B22A, which covers Other Necessary Expenses: telecommunications services. The instructions for Line 32 clearly state that a debtor should include on this line the amount you "actually pay for telecommunications services other than your basic home telephone and cell phone service. . . . *to the extent necessary for your health and welfare or that of your dependents*." (Dkt. 6, Line 32, at p. 5 (Emphasis added). The expenses of home telephone and cell phone service are already included in the IRS standard deductions allowed on other lines on Form B22A. Thus, a debtor seeking to deduct expenses under Line 32 must demonstrate that these expenses are necessary for her health and welfare. This Debtor has made no such showing.

21. Thus, $437.00 should be added back into the Debtor's income.

22. Pursuant to 11 U.S.C. § 707(b)(2)(B)(i), "the presumption of abuse may be rebutted only by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent that such special circumstances justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative."

23. The Debtor is healthy and not in the military.

24. Upon information and belief, there are no special circumstances to rebut the presumption of abuse; and the Debtor has not asserted any such circumstances.

25. According to Form B22A, the Debtor asserts that she has monthly disposable income available under Section 707(b)(2) of (**-$366.44**).

26. The incorrect deductions on Form B22A should be reduced by $780 (on Line 25), and $437 (on Line 32), for a total of $1,217.00. When these deductions are corrected, the Debtor's monthly disposable income will rise from (**-$366.44**) to $850.56 in monthly income with which to fund a Chapter 13 plan.

27. The monthly income available ($850.56) multiplied by 60 equals $51,033.60. This would be more than enough to fund a 100% plan.

28. Plainly, the Debtor is able to fund a meaningful repayment plan to creditors.

### This Case is Otherwise An Abuse Under 11 U.S.C. § 707(b)(3)

29. Further, dismissal of this case is warranted under Section 707(b)(3) of the Bankruptcy Code because the totality of the circumstances demonstrates abuse and perhaps for bad faith. Section 707(b)(3) provides:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(I) does not arise or is rebutted, the court shall consider -
>
> (A) whether the debtor filed the petition in bad faith; or
>
> (B) [whether] the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3).

30. The Debtor reports on Schedule J that her monthly net income is **(-$1,343.87)**.

31. However, certain payroll deductions are overstated and certain expenses are unreasonable. If the Debtor adjusted Schedules I and J to conform to actual liabilities and reasonable expenses, there would be additional income available to pay creditors.

32. First, the Debtor's net income is actually greater than she states because she is making inappropriate deductions from income. As previously noted, the Debtor is over-withholding for tax liabilities. On Schedule I, the Debtor deducts $2,818.20 each month for taxes. (Dkt. 1 at p. 28.) Again, and as discussed above, this withholding should be reduced by a conservative $780.00.[5]

33. Second, per her itemization attached to Schedule I, the Debtor is deducting from her income $80.46 and $226.01 in repayments to 401(k) loans. (Dkt. 1 at p. 29.) These deductions total $306.47.

34. Voluntary contributions to retirement accounts and repayments to related loans are not permissible deductions when determining a debtor's ability to pay creditors under Section 707(b)(3). *In re Lipford*, 397 B.R. 320, 330 (Bankr. M.D.N.C. 2008) (voluntary contributions to qualified retirement plans should not be considered when calculating disposable income); *In re Edighoffer*, 375 B.R. 789, 798-99 (Bankr. N.D. Ohio 2007) (401(k) contributions not allowed in (b)(3) analysis); *In re Bender*, 373 B.R. 25, 30 (Bankr. E.D. Mich. 2007) (401(k) loan and contributions not allowed for 707(b)(3) analysis).

35. Once these adjustments are made, the Debtor's net monthly income increases by $1,086.47 from $5,172.04 to $6,258.51.

36. The Debtor lists her current monthly expenses on Schedule J as $6,515.91. After her net monthly income is adjusted to $6,258.51, the Debtor's net monthly income on Schedule J should be itemized as (**-$257.40**).

---

[5] Indeed, the Debtor fully expects to receive tax refunds in 2013, because she has listed them on Schedule B with a value of unknown and she has sought to exempt them on Schedule C.

37. However, the Debtor includes certain unreasonable or incorrect expenses on Schedule J. If these expenses are adjusted to correct or more reasonable levels, she will have monies to fund a repayment plan.

38. First, the Debtor includes telecommunication costs for Internet/Cable TV, House Phone and Cell of $437. This amount is excessive given that many cable companies are now offering plans as low as $79 per month for Internet/Cable/Landline phones. Because she has not listed any executory contracts on Schedule G, it is reasonable to assume that she can terminate existing contracts without penalty for more advantageous terms. This expense should be reduced from $437 to $200, for a savings of $237.00.

39. Next, the Debtor lists home maintenance costs of $332.91. This is extremely high. *See, e.g., In re Daniels-Brown*, 2008 WL 4936387 (Bankr. D. Md. 2008) (Mannes, J.) (finding that monthly home maintenance costs of $100 for rental property were "extraordinary," and reducing that amount to $25.00). Without further evidence that these costs are reasonable, this deduction should be reduced from $332.91 to $57.91, for a savings of $275.00.

40. Third, the Debtor includes monthly clothing expenses of $200, charitable contributions of $340, and recreation costs of $200.00.

41. The Debtor's monthly clothing allowance of $200 amounts to $2,400 annually. While this expense may be fine pre-petition, the Debtor's creditors should not have to fund this expense, except perhaps as to clothing for her teenaged niece. Further, this Debtor has worked as a professional for four years. She should not need to update her wardrobe at the expense of her creditors. This cost should be reduced by $150 to $75 per month, for a savings of $75.

42. The Debtor's charitable contribution of $340 monthly appears to be inappropriate, given that this deduction does not match the Debtor's sworn statement on her SOFA. On her SOFA, when asked to list charitable contributions exceeding $100 to non-insiders, the Debtor answered, "None." (Dkt. 1 at p. 35.) Without further proof of this actual expense, this deduction on Schedule J should be reduced from $340 to $0.

43. Finally, the recreation costs, without documentation, should be reduced from $200 to $100.00, for a savings of $100.[6]

44. Together, these conservative reductions total $1,027. When these monies are deducted from the expenses asserted on Schedule J, the Debtor's true monthly expenses total $5,488.91 ($6,515.91 on Schedule J minus corrections of $1,027).

45. When the correct monthly expenses of $5,488.91 are deducted from the corrected income of $6,178.51, the Debtor has net monthly income of $689.60. This amount times 60 equals $41,376.00. This is sufficient to fund a more than 80% repayment plan to her creditors.

46. In short, the Debtor appears to have excess income with which she could pay her creditors.

47. Finally, this Court also could dismiss this case under Section 707(b)(3) for bad faith.

48. On Schedule J, the Debtor lists a monthly payment of $695 for a 2013 Hyundai Azera. On Schedule B, she lists this brand-new car and a 2007 Toyota Camry with 100,000 miles. (Dkt. 1 at p. 12.)

---

[6] Again, if the Debtor's household is less than three persons, it may be reasonable to further reduce these and other expenses.

49.     At the 341 Meeting, the Debtor testified that she consulted counsel about filing for bankruptcy in November 2012, and decided to file in December 2012.   Despite making this decision, in August 2013, two months before actually filing for Chapter 7 relief, she bought the Hyundai.   This is a luxury vehicle – the Debtor testified that the sticker price was $42,000.   After trading in her Camry for a value of $6,200 and other dealer incentives, the total purchase price was $32,000.

50.     Debtor's counsel stated at the 341 Meeting that the Debtor would reaffirm this debt and, therefore, this creditor would not be harmed.   However, this attitude completely dismisses the fact that, as a result of this purchase, the Debtor has chosen to pay nothing to her other creditors, particularly the unsecured creditors who appear to have carried her for quite some time.

51.     Accordingly, this Court could dismiss this case as filed in bad faith.   *See, e.g., In re Hornung,* 425 B.R. 242, 249 (Bankr. M.D.N.C. 2010) (finding that debtors' eve-of-bankruptcy purchases of two vehicles was "troublesome behavior tend[ing] to show that [the] bankruptcy was an attempt to get a head start instead of a fresh start" that supported dismissal due to bad faith)(*citing Green v. Staples (In re Green)*, 934 F.2d 568, 570 (4th Cir. 1991).

52.     The Debtor's "ability to pay a significant dividend to creditors and the failure to do so standing alone can be an abuse of chapter 7, absent mitigating factors."   *In re Calhoun*, 396 B.R. 270, 276 (Bankr. D. S.C. 2008), *aff'd sub nom. Calhoun v. U.S. Trustee*, 650 F.3d 338 (4th Cir. 2011).   The United States Trustee is not aware of any such mitigating circumstances.

53.     Upon information and belief, the bankruptcy petition was not filed because of sudden illness, calamity, disability or unemployment.

54.     The Debtor should not be allowed a discharge without contributing all available

disposable income to repay unsecured creditors through a Chapter 13 plan. To do otherwise would be an abuse of the bankruptcy system.

55. Pursuant to Local Bankruptcy Rule 9013-2, the UST relies solely upon the present motion, and no additional memorandum of fact or law will be filed in support.

WHEREFORE, the United States Trustee respectfully requests that the Court dismiss this case under 11 U.S.C. § 707(b)(2) and (b)(3) and grant such other and further relief as may be necessary and appropriate.

Dated: January 6, 2014                                          Respectfully submitted,

**JUDY A. ROBBINS**
United States Trustee for Region 4
By Counsel:


*/s/ Jeanne M. Crouse*
Jeanne M. Crouse, Bar No. 05329
6305 Ivy Lane, Suite 600
Greenbelt, MD   20770
(301) 344-6219
Fax: (301) 344-8431
E-mail: jeanne.m.crouse@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 6, 2014, I caused to be served true and correct copies of the United States Trustee's Motion to Dismiss for Abuse and proposed Order:

*By ECF Notification Upon:*

J. Michael Broumas michael@broumas.com, irene@broumas.com, donna@broumas.com, olga@broumas.com, jmbroumas@gmail.com, kareen@broumas.com C*ounsel for the Debtor*

Steven H. Greenfeld, trusteegreen@cohenbaldinger.com, sgreenfeld@ecf.epiqsystems.com, *Chapter 7 Trustee*

*And by First-Class U.S. Mail, Postage Pre-paid, Upon:*

AmeriCredit Financial Services, Inc. dba GM Financial
P O Box 183853
Arlington, TX 76096
*Creditor*

Ms. Felicia Renee January
632 Evening Star Place
Bowie, MD   20721
*Debtor*

> */s/ Jeanne M. Crouse*
> Jeanne M. Crouse